[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10306
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00094-CR-KD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE JESUS CASTREJON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 9, 2010)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Jose Jesus Castrejon ("Castrejon") appeals his conviction for conspiracy to

possess with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Although he argues that the district court failed to comply with Rule 11 when it acquiesced to the parties' agreement to defer determination of the applicable drug quantity until sentencing but later failed to make the required determination, he invited any alleged error by adopting the Pre-sentence Investigation Report ("PSI"). Therefore, we AFFIRM.

## I. BACKGROUND

Castrejon was indicted by a grand jury for one count of conspiracy to possess with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1), two substantive counts under the same statute, and one forfeiture count. R1-11. The indictment alleged that the conspiracy covered the period from early 2005 to 17 March 2008. *Id.* at 1. He pled guilty to the conspiracy count pursuant to a written plea agreement, and the remainder of the counts were dismissed. R1-34 at 1. The plea agreement stated that the maximum penalty that could be imposed was 10 years to life imprisonment. R1-26 at 3. In the plea agreement, Castrejon agreed that the factual resume filed with the plea agreement was true and correct. *Id.* at 2.

The factual resume detailed transactions with confidential informants in 2008 involving a total of approximately 198 grams. R1-27 at 1-5. It also indicated

2

that, in 2005, Castrejon had provided another informant with methamphetamine, beginning with three to four ounces at a time and including two occasions on which he delivered one pound. *Id.* at 7. Finally, it noted that the "parties do not agree on the drug amount for which the defendant is accountable, and have agreed to allow the Court to make that determination at the time of the sentencing." *Id.*

At the guilty plea hearing, Castrejon indicated that he understood the terms of his plea agreement. R1-57 at 8. The district court informed him that the "maximum penalty the Court could impose is a minimum 10 years up to life imprisonment," and he indicated that he understood. *Id.* at 10. In explaining the charges to Castrejon, the court stated that the "government has alleged more than 500 grams of methamphetamine were involved in the conspiracy, but I understand that you and the government do not agree on the amount and that that will be left for sentencing." *Id.* at 14. Finally, the court confirmed that Castrejon understood and agreed that by signing the factual resume, he was agreeing that the government could prove the facts set forth in it. *Id.* at 15.

Following this hearing, the probation officer prepared a PSI, which noted that the parties did not agree on the drug amount. PSI ¶ 16. However, the probation officer also stated that the government's records reflect that Castrejon was involved with 4.508 kilograms, and, therefore, the probation officer stated he

3

would use that amount in calculating the guidelines range. *Id.* The probation officer determined that Castrejon's base offense level was 38 because the offense involved 1.5 kilograms or more of "Ice" methamphetamine. *Id.* at ¶ 21. After a three-level reduction for acceptance of responsibility, his total offense level was 35. *Id.* at ¶¶ 27, 28, 31. Because he had no criminal history – a criminal history category of I – his guidelines range was 168 to 210 months. *Id.* at ¶¶ 35, 63. The PSI also indicated that the statutory minimum was 10 years and the maximum was life imprisonment. *Id.* at ¶ 62. In his written response to the PSI, Castrejon stated that he had no objections and that he adopted "the application and determination of sentencing factors and the guidelines calculations contained therein." R1-32.

At the sentencing hearing, the court noted that it had not received any objections from the defense then stated that the "PSI indicated perhaps there was a dispute over the amounts. But I never received any objections over the amount of drugs involved." R1-50 at 3. The government responded, "That's correct, your Honor. I spoke with [the defendant's attorney] to confirm that he had no objections. And he confirmed for me that there were no objections and indicated that [another attorney] would be standing in for him today." *Id.* When imposing Castrejon's sentence, the court commented, "Quite frankly I did not see in the [PSI] enough evidence to support the four kilograms or the 1.5 kilograms to hold

4

this defendant responsible. But since there is an agreement to that I would find that amount." *Id.* at 8. In light of the fact that this was his first offense and he had a consistent work history, the court sentenced him to the mandatory minimum sentence of 10 years' imprisonment, which was below the guidelines range. *Id.* When asked for objections, Castrejon responded that he had no objections. *Id.* at 9.

## II. DISCUSSION

On appeal, Castrejon argues that because the district court that accepted his guilty plea acquiesced in the parties' agreement to defer the determination of statutory drug quantity until sentencing, the court could not comply with the requirement of Rule 11 that he be informed of both the maximum possible penalty and the mandatory minimum penalty. He does not, however, suggest that the court committed Rule 11 error during the guilty plea hearing. Instead, he argues that the Rule 11 error occurred when the district court failed to make the statutory drug quantity determination at sentencing. He asserts that the court reluctantly adopted the PSI's guideline calculation of drug quantity because there were no objections to the amount, not because there was sufficient evidence to support that amount, but maintains that his failure to object to the drug quantity calculation for purposes of calculating his guidelines range should not be interpreted as his acquiescence to that amount in the context of establishing the drug quantity for purposes of

5

§ 841(b).  Therefore, he asserts that he is entitled to plain error relief because (1) his substantial rights were affected because the imposition of a mandatory minimum sentence without a finding that it should have applied limited the court's sentencing discretion, (2) a conviction based on evidence that the court found "frankly" insufficient seriously affects the fairness, integrity, or public reputation of judicial proceedings, and (3) he would not have bargained for a deferred determination of the statutory drug amount and associated minimum and maximum penalties if he had intended to plead guilty to a ten-year mandatory minimum sentence.

We review a Rule 11 error raised for the first time on appeal for plain error. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003).  Under plain error review, the defendant has the burden to show that: (1) there is an error, (2) that is plain or obvious, (3) affecting the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings.  *Id.*  We may consider the whole record when considering whether Rule 11 error occurred or prejudiced the defendant.  *See United States v. Vonn*, 535 U.S. 55, 74-75, 122 S.Ct. 1043, 1054-55 (2002).

In order to show that his substantial rights were affected, a "defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district

court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 2340 (2004). The fact that a defendant did not move to withdraw his guilty plea upon learning of a mistake suggests that he cannot make this required showing. *See United States v. Bejarano*, 249 F.3d 1304, 1306-07 (11th Cir. 2001) (per curiam).

However, we are precluded "from reviewing an issue raised on appeal if it has been *waived* through the doctrine of invited error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (emphasis in original). The "doctrine of invited error is implicated when a party induces or invites the district court into making an error." *Id.* (citation omitted). We have applied the doctrine to alleged errors in the plea process that were not corrected at sentencing, as well as to alleged errors that originated at sentencing. *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam); *United States v. Harris*, 443 F.3d 822, 824 (11th Cir. 2006).

In this case, the doctrine of invited error applies. Castrejon was aware that the determination of the applicable drug amount was being deferred until the sentencing hearing; however, rather than filing objections to the PSI's use of more than 1.5 kilograms in its calculations, he filed a response with the court stating that

he "adopt[ed] the application and determination of sentencing factors and the guidelines calculations contained therein." R1-32. As a result of his adoption of the PSI's calculations, the district court, at sentencing, acquiesced in the use of that drug amount even though it questioned whether there was sufficient evidence to support finding him responsible for it. *See* R1-50 at 8. Thus, Castrejon invited any error that he alleges occurred, and we will not review his claim.

### III. CONCLUSION

Castrejon's appeal based upon the district court's alleged failure to comply with Rule 11 is predicated upon invited error. Accordingly, we reject Castrejon's appeal and **AFFIRM** his conviction and sentence.